The next case slated for oral argument this morning is United States v. Critten No. 20-3703. We have Ms. Tuohy and Mr. Silver. Yes. Good morning. May it please the court, I'm Melissa Tuohy with the Office of the Federal Public Defender appearing today on behalf of the appellant Thomas Critten. The District Court's decision in order denying motion to suppress evidence is erroneous because the government failed to prove the existence of independent reasonable suspicion justifying Critten's prolonged detention at the scene of a traffic stop that was completed in under four minutes and at least nine minutes before Detective Shattuck arrived at the scene and further prolonged the already unlawfully prolonged stop. He changed the target from the driver to the passenger. He expanded the scope of the stop that continued for more than 20 minutes without any independent reasonable suspicion. The District Court erroneously relied on Detective Shattuck's claim of a tip that analysis because the description is much too broad and vague. It sweeps into many people. Well, it's a black man without luggage, right? Correct. And then there was and then the detective saw a man getting that general description getting into a cab and then there was a call from the cab company indirectly saying that he's given a address that doesn't exist. Well, again, your honor, how does he know which black man is the black man in the tip? There's no description other than black man without luggage. Right, but he didn't stop him at that point. There was no stop at that point. There was no nothing happened at that point. That was just one piece of information and then there are additional pieces of information that take place before the legitimate traffic stop. I respectfully disagree with that because he said he saw the man get off the bus and told Deputy Jones to follow the cab that had the black man in the cab. So your view was illegal to follow the cab? No, I'm saying that he decided that that person was the person in the tip, but he had no way of really deciding that because there's no descriptive factors connected to this passenger. Well, ordinarily people can travel with or without luggage and it's no business of the police. But here, this is a one day, a single trip that this bus makes to this one stop and you can't leave until the following day. So if you're traveling without luggage, that's remarkable. You could be going to stay with friends, but once the police know that the address to which he is going does not exist, why isn't that sufficient to justify a stop? First of all, the Detective Shattuck's testimony was that the bus stays in Messina for either an hour or an hour and a half before it returns on the same route. Also, this is a bus that is more like a local bus. There's 13 stops that include college stops, there's a college town, there's military, there's Amish, and even the bus driver testified that they take flag stops like a person could be standing on the side of the road and flag the bus down. The problem with Detective Shattuck deciding that this person is the person in the tip is because he doesn't have any way to decide that other than the person being black and being a man, and that's not reasonable. If he received the tip, even if you credit his testimony, that he received the tip at 8 30 that morning, and that the tip involved a person by the name of Jamal Clay coming from, first he says New York City, and then he says Syracuse, New York. So even if you credit that, he didn't do anything for two and a half hours to find out anything about this person in order to be able to identify anyone coming off the bus. He didn't run a Jamal Clay. He knows nothing about anything about this person or any of the other passengers on the bus. We don't know anything about the other passengers on the bus because he didn't document anything that pertained to this alleged tip that he was acting on. Was there anything in the record that contradicted his statement that he received such a tip? Well, yes, the existing police reports and the 911 dispatch recording, because not a single officer talks about the tip in their reports, particularly Deputy Jones, who initiated the stop based on the turn signal violation. What's critical here is that we have dispatch recordings in real time over what was happening, and Deputy Jones calls the dispatcher to run Thomas Critton's name, and nothing is coming back because of database failures, but he never runs the name Jamal Clay. If they think the person in the cab is the person at the center of the tip, certainly they're going to run the name Jamal Clay. All Deputy Jones says to the dispatcher is, I got to call you back. We got to find out what's going on with this guy. That's the language that they all use is we got to find out what's going on with this guy. But again, I was asking whether there was anything that contradicted Detective Shattuck's account, and you're saying that the omission is in essence a contradiction. That's how you read it. Yes, I do, because there's several police reports, and Deputy Jones also testified at the hearing. He was called by the defense, and he never contradicted his original report that he stopped the cab based on a traffic violation. He never says anything about an investigation into a tip about a person coming off a bus. But you aren't challenging the ability of the police to stop the car once it is violated the law. I am not, Your Honor. And then when it stopped, there's a passenger, and there's nothing that the name was given, which was Crittenden, or Critten. Oddly enough, it's the correct name, but it sounded like the false name, because the cops happen to know he was traveling under the name of Jamal Clay. So isn't that something that would alert the police to think that further inquiry is needed? No, Your Honor, because they don't know whether or not he is the person that's the center of the tip, that's Jamal Clay, because they have no description of him other than black man. How do they know that this is Jamal Clay? Had they done an investigation upon receiving the alleged tip, they would have run a background check on Jamal Clay. That is standard police procedure. He had two and a half hours before the bus got to Messina. And we also have to look at what they're saying about how this tip arrived, that it's a bus driver that spoke to a border patrol agent three or four years prior, who was told to call the agent if she saw anyone that didn't look quite right. And then, so Reverd calls Detective Shattuck. It was Reverd who called Detective Shattuck, right? Correct. So I understood that to be the source of the tip, although obviously Reverd would have heard from some other source, but was that established in the record that it was the bus driver who later said no? Well, no, it was not established. So again, the bus driver was called by the defense and she didn't recall anything about it. And that's the biggest problem with this case is because six months later, Detective Shattuck is raising this tip for the first time when it's not in any police report. It's not reasonable for an experienced and trained police officer to not document an investigation that he's starting into what he believes is drug trafficking activity. It's almost like a game of telephone at this point. You have a bus driver calling an agent who's calling Shattuck. And now six months later, he's expected to remember it, which by the way, he testified he didn't even remember it. That's why he didn't put it in his testimony, which was eight months after the stop. Thank you very much. You have reserved some time for rebuttal. We'll hear you. Yes. Thank you, Mr. Silver. Thank you, Your Honor. May it please the court. I have to start with an apology because there's something in the record that I failed to include in my brief, which addresses the activity that Detective Shattuck took before the bus arrived. It was not the sort of activity that my adversary is discussing, but he and other officers went to each of the seven or six other bus stops in St. Lawrence County, where this bus stops before arriving at Messina to see if someone matching the description in the tip got off the bus. And no one did at any of those locations. So that, I think, supports Detective Shattuck's actions when the bus finally gets to Messina to some extent. Does the record show anything about whether how many other passengers were on the bus and whether there was any other person who descended from the bus without luggage? I don't believe the record does, Your Honor. In terms of whether this driver was identified as the informant, it is true, as my adversary recounts, that she did not recall providing this specific information to Agent Reverd. But Detective Shattuck testified that the bus driver was the informant. But Detective Shattuck, he also said he spoke with Agent Reverd, not the bus driver. Isn't that right? That is correct. But I'm inferring that Agent Reverd would have conveyed that information to Detective Shattuck in order for him to give that testimony. Well, what are we to make of the fact that he didn't record any of this down in the police reports made contemporaneously, and that his testimony was that he'd forgotten about it entirely until Reverd reminded him that there was a tip? It sounds remarkably post hoc. And that's a fair assessment, Your Honor. But these witnesses provided affidavits before the hearing. They testified in front of Judge Sotheby during the hearing. And Judge Sotheby made the determination that, notwithstanding the absence of these prior reports, he found them to be credible. I don't think there's a basis to upset that determination, Your Honor. And what about the adequacy of the description, generally, a black man relying on race and gender, carrying no luggage at this stop, where, as it's been pointed out, there have been seven prior local stops, and we have no basis in the record for knowing who else fit a similar or whether anyone else fit the similar description. It, again, seems very, very loose as a basis for stopping someone and then proceeding as the events unfolded. I agree, Your Honor. And if the police had stopped the car on the basis of the fact that there was a black male with no luggage, I would not be able to be arguing to you that they had reasonable suspicion for the stop. But as has been discussed, immediately upon Mr. Critton getting into the car, the owner of the cab company called and said that one of his drivers had just picked up a passenger at the bus stop and had been asked to take him to a location that doesn't exist. But isn't the record also very it turned out there was a 6A, I think it's Parker Avenue, right? And, you know, it's a short street. He professed knowledge of it based on prior drug deals that he had, you know, controlled buys that he had participated in or knew of there. You know, it's, again, remarkably unclear whether the what address was asked for initially and whether it in fact existed or didn't, isn't it? Respectfully, Your Honor, I have to disagree. I think it is crystal clear that Mr. Critton asked to be taken to 6A, Parker Avenue, and that either the driver and the bus company owner or just the bus company owner believe that to be a non-existent address. Detective Shattuck was cautious in dealing with the information provided from the cab company owner, and he telephoned a Messina police officer to determine if he was aware of an address on Parker Avenue. And as you say, it's a short block, maybe a mile long. And that officer said, I'm not aware of a 6A on Parker Avenue. So the only discrepancy that I see is in Detective Jones's report where he wrote 61, not 6A, and he explained that that was a typo. So the defense has suggested that there's such a building, but I don't think they have established that. Thank you. So we have those facts known to Detective Shattuck prior to the stop. In any event, the stop is not contested because there was a traffic violation. It was, as I believe Judge Jacobs suggested, within the purview of the police to say to the passenger, what's your name and where are you going? There's no indication that that extended the duration of the stop. And through the database error, the police were not able to confirm that such a person existed. Well, again, I mean, doesn't that suggest he gave a truthful answer? He didn't have ID on him, but he gave a truthful answer as to his name and date of birth. And the fact that the police database system was not operative seems to be being used by the government as an additional factor warranting further examination of Mr. Critton. Why shouldn't that be troubling to us? I don't think it should be troubling to you, Your Honor, because the issue is what was happening at the time, what information was known to the police. And the fact that there was an innocent error in dealing with this Spillman database would have heightened the suspicion of the police. And even if, I'm sorry, Your Honor. But didn't they know at the time that the database was malfunctioning and that's why was a no-hit kind of answer? Or did they not understand that and thought that it was significant somehow that there was no answer as to this query? Well, I do believe they drew a distinction by saying that it was not a no-hit in the testimony. It was that the database just failed to produce any information. There's an additional fact though, isn't there? I mean, he said he was coming from Elmira and the detective knew that the bus didn't stop in Elmira. Yes. Yes. But with regard to the identification, even if, even if, and I hate to go off into this hypothetically, Your Honor, but even if the police were able to establish that Mr. Critton had provided his real name, as they ultimately learned by finding the bus ticket and the cab that he traveled under the bus, so I'm not sure if the, if the system had been working, that they would have been able to resolve Mr. Critton's true identity. And then, you know, in addition to what was stated in terms of identification, ultimately, Detective Shattuck asked Mr. Critton to get out of the car. That encounter added to the facts supporting reasonable suspicion. Mr. Critton was nervous. He provided conflicting stories. He told Detective Shattuck, first, that he was visiting his fiance, and second, that he was going to go to a Sunoco station to call his fiance, so he could get back to New Jersey, which I think is fairly characterized as plausible on its face. Could you take a moment and march just through the chronology? So they had the tip, as of the time of the stop, and the questioning, and then I think what Ms. Toohey is arguing is that the stop was unreasonably prolonged and led to the discovery of the bus ticket and the backseat, the canine sniff, and so on, but that there was inadequate basis for the stop to have been prolonged at that time. So, I mean, it was after the stop kind of proceeded that he gave this conflicting information that seemed patently incredible about Elmira and not knowing his fiance's address and having gotten on the wrong bus and so on, but before that interchange happened, what did the police know that justified the prolongation of the stop? Well, in terms of, if I may, Your Honor, we're not arguing that the stop was not prolonged beyond what would be necessary to conduct a traffic stop. I understand, but I just want to focus on what justified the prolongation. Well, we believe, Your Honor, that the facts known to the police at the time of the stop, apart from the traffic infraction, provided reasonable suspicion that the tip coupled with Mr. Critton leaving the bus, providing the address that is believed to be unknown, that was enough to provide reasonable suspicion for a brief investigatory stop. Okay, what's going on here? Then, as has been discussed, Mr. Critton providing his real name and date of birth, apparently, was unable to be confirmed by the police. So that fact, I would say, did not prolong the stop. That was within the parameters of a traffic stop. Once that was over, that's when Detective Shattuck comes to the car and says, and I should add, as Justice Sullivan, Judge Sullivan mentioned it, he also mentioned he was coming from Elmira. So that had happened by that time, and that was patently untrue, based on the knowledge of that. Yes. Once that happened, we cannot justify the duration of the stop as a traffic encounter. I would say, though, that we have an obligation, or the police have an obligation, not to prolong a stop based on reasonable suspicion. And that just didn't occur here. I mean, the stop to arrest is, you know, less than 30 minutes. All right. We'll hear the rebuttal from Ms. Tuohy. Thank you very much. Yes, Your Honor. Thank you. Your Honor, first, I want to start with the government's claim that about the tip, there was only one witness presented by the government, and that was Detective Shattuck, who was speaking off of memory eight months after the traffic stop, and also could not remember the tip that the bus driver could not remember as well. So, again, without this tip, they have nothing. You can't rely on the address. Say that, Clinton gave an address that didn't exist, which the government failed to prove. All they proved was that Detective Shattuck believed an address that existed did not exist. Even without the tip, all you have is the address, and that's not unusual. That doesn't point to drug trafficking activity if a person is mistaken about an address. All that Detective on that street over a few years. It's not even a drug trafficking. They didn't even establish that it's a street known for drug trafficking. Can I interrupt you, Ms. Tuohy? Yes. At the time that this stop is prolonged beyond the traffic infraction, the knowledge available to the police is that he got off a bus without luggage. He asked to take a cab to an address that was not apparently an address on a street known for drug transactions, and that he gave a false statement about where he was coming from. Why isn't that enough for reasonable suspicion to prolong a search to figure out who this guy is and to ask additional questions? Because, first of all, under Rodriguez, you can't change the target. You have to deal with traffic matter. You can't detain people beyond the traffic matter, which is what happened. They focused on Critton because he gave a true name and their machinery didn't work. That can't be held against him when he is complying at all times and answering their questions. He could have come from Elmira. He could have started in Elmira and ended up in Messina. That's not unusual, and that only matters if they think that he is Jamal Clay coming from either New York City or Syracuse, and they don't know that because they don't know anything about Jamal Clay. They don't have any idea whether this person, if anything, when he answered Thomas Critton and said he was coming from Elmira, that would dispel their suspicion that he's the person in the tip. They don't have any justifiable reason to disbelieve him. Well, they know that the bus doesn't stop in Elmira, right? Well, there can be a bus from Elmira to Syracuse that he could have gotten on to come to Messina. And again, with the lack of luggage, I just want you to look behind what Detective Shattuck is saying about that. He's making these broad generalizations about travel that all people that come to Messina must stay overnight, and if they stay overnight, they require a bag. I mean, he can't make that broad generalization. No, but I think his assumption was that if you arrive in Messina without luggage, you are probably on a courier who is planning to be back at the bus before it leaves, because there's no other bus. That was not his testimony. He said there's not enough time to do anything in Messina in either an hour or an hour and a half before the bus takes its way back. And again, it's like he doesn't have over 11 years that resulted in 20 arrests. We don't know for what or whether they led to convictions. That's not a really good track record in order to say that all people that ride the bus that don't have luggage are drug couriers. That's not specific or articulable. It's a broad generalization. Thank you very much. We have the arguments, I believe, and we will reserve decision. Thank you. Thank you, Your Honors. Both. We have two more cases on the calendar for today, and they're taking on submission. Those are number 2063, United States v. Petway, and number 201659, Muir v. Kirschmeier. We'll reserve decision on those matters as well. The courtroom deputy will please adjourn court.